1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF VIRGINIA
2             ALEXANDRIA DIVISION

3   -------------------------------x
                                   :
4   UNITED STATES OF AMERICA       : Criminal Action No.:
                                   : 1:23-cr-156
5                                  :
         v.                        :
6                                  :
    DANIEL MARC LOFARO,            : October 11, 2023
7                                  :
                   Defendant.      :
8   -------------------------------x

9            TRANSCRIPT OF DETENTION HEARING
          BEFORE THE HONORABLE LINDSEY R. VAALA,
10      UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

11                A P P E A R A N C E S

12   FOR THE GOVERNMENT:    LAUREN HALPER, AUSA
                            United States Attorney's Office
13                          2100 Jamieson Avenue
                            Alexandria, VA 22314
14   FOR THE DEFENDANT:     FRANK SALVATO, ESQ.
                            1203 Duke Street
15                          Alexandria, VA 22314

16                          MICHAEL SPRANO, ESQ.
                            The Sprano Law Firm
17                          10603 Judicial Drive
                            Fairfax, VA 22030

18

19
    (Proceedings recorded by electronic sound recording transcript
20   produced by computerized transcription.)

21

22

23   OFFICIAL U.S. COURT REPORTER:    MS. TONIA M. HARRIS, RPR
                                      United States District Court
24                                    401 Courthouse Square
                                      Tenth Floor
25                                    Alexandria, VA 22314

———United States v. Lofaro———

2

1           **P R O C E E D I N G S**

2     (Court proceedings commenced at 2:10 p.m.)

3

4           THE COURTROOM CLERK:  The United States of America

5     versus Daniel Mark Lofaro.  Case No. 23-cr-156.

6           MS. HALPER:  Good afternoon, Your Honor.  Lauren

7     Halper on behalf of the United States.

8           THE COURT:  Good afternoon, Ms. Halper.

9           MR. SALVATO:  Good afternoon, Your Honor.  Frank

10    Salvato and Michael Sprano for Mr. Lofaro, who is present.

11          THE COURT:  Okay.  Good afternoon.  Good afternoon,

12    Mr. Lofaro.

13          All right.  I have this down for a detention

14    hearing, first of all.  I understand Judge Fitzpatrick on

15    Friday issued a temporary release order so that Mr. Lofaro

16    could attend the funeral of a family member and set the

17    detention hearing today.

18          MR. SALVATO:  That's correct, Your Honor.  If I

19    could proffer a few facts that came out in front of Judge

20    Fitzpatrick and give a little more depth to what Judge

21    Fitzpatrick did, I think that would be helpful.

22          THE COURT:  Okay.

23          MR. SALVATO:  I would have a proffer as to a few

24    facts.

25          THE COURT:  Okay.

─────────United States v. Lofaro─────────

3

1      MR. SALVATO:  In the case and kind of what happened

2  in front of Judge Fitzpatrick.

3      THE COURT:  Okay.  And I'm sure Ms. Halper will also

4  have a proffer of her own.

5      MS. HALPER:  Yes, Your Honor.

6      THE COURT:  Okay.

7      MR. SALVATO:  Thank you, Your Honor.

8      THE COURT:  Sure.

9      MR. SALVATO:  Your Honor, the end of May 2022, law

10  enforcement effectuated a search on Mr. Lofaro's residence.

11  Mr. Lofaro reached out to Mr. Sprano and myself late May,

12  early June of 2022 to retain us regarding this particular

13  investigation.  I can tell the Court that on June 22, 2022, I

14  did reach out to the government through the case agent as well

15  as the prosecutor indicating that we had been retained in the

16  case and if there was anything to discuss, reverse proffer or

17  any insight on the case, to please let us know at that time.

18  After that initial communication between ourselves and law

19  enforcement, the -- there was a second search effectuated at

20  Mr. Lofaro's residence.  After that second search, obviously,

21  Lofaro, myself, and Mr. Sprano had been in contact over these

22  past 15 months or so.

23      I can tell the Court that on Thursday evening,

24  October 5th, then spilling into Friday morning, October 6th,

25  we were informed that an indictment had been returned against

─────── United States v. Lofaro ───────

4

1    Mr. Lofaro.  There had really been no communication from the

2    government back to us regarding the situation and the

3    underlying investigation.

4          Mr. Lofaro has presented to Judge Fitzpatrick his

5    dad had actually passed away a couple days previously.  The

6    government indicated on Friday morning that if he wanted to

7    self-surrender he needed to do that by 12 noon.  I can tell

8    the Court that Mr. Lofaro was actually on his way to

9    Pennsylvania for his father's funeral at that time.  I can

10   also tell the Court, by way of proffer, his family is here,

11   his wife, his mom, and his sister.  His mom and his sister

12   both live in Pennsylvania, and they were all present at the

13   funeral.

14         After some back and forth with Judge Fitzpatrick,

15   and I think the government elicited some proffer facts about

16   some of the chats in this case and whatnot, Judge Fitzpatrick

17   decided to let him out, basically with the strict admonition,

18   that you should hopefully, you know, abide by these temporary

19   conditions of release.  I can tell the Court, by the way of

20   proffer, that Mr. Lofaro gave his passport to Mr. Sprano that

21   day.  There was also a couple of firearms in the house.  They

22   were also given to Mr. Sprano, and he has locked them up in

23   his personal safe.

24         I can further proffer to the Court that Mr. Lofaro

25   did travel to Pennsylvania with his wife, who is present.

──────────── United States v. Lofaro ────────────

5

1   They did attend the services, and he stayed with his mom the

2   entire time.  He had his GPS monitor on.  There was no issues,

3   according to the pretrial report.  Mr. Lofaro was instructed

4   to return, not to his residence, but simply to court today at

5   1:30.  He did meet us outside.  We talked to him and his

6   family, and that's what brings us here.  So it's a little bit

7   of a strange procedural background, but that's the proffer, in

8   terms of the investigation, the contact, his retaining

9   counsel, and also him going to his father's funeral.

10           I do, obviously, have an argument based upon the

11  pretrial report, but I think it was important to proffer those

12  facts in terms of kind of procedurally where we got today.

13           THE COURT:  Thank you.  That is helpful.  I knew

14  some of that, but having the extra detail was helpful since

15  I'm playing catchup a little bit.

16           All right.  Ms. Halper, happy to hear from you on

17  detention.

18           MS. HALPER:  Yes.  Thank you, Your Honor.  Your

19  Honor, I would like to start by proffering some of the facts

20  in this case.  I have handed to both defense counsel a small

21  set of exhibits, which I would also like to pass up to Your

22  Honor.  First, I'd like to -- through the assistance of your

23  court security officer, if there's no objection.

24           THE COURT:  Yes.  Thank you.

25           MS. HALPER:  Your Honor, I'd first like to sketch

─────────────── United States v. Lofaro ───────────────
6

1   out a little bit of the history of the case, and then I would

2   like to briefly go in depth about some of these exhibits.

3         I'll also just say, Your Honor, for the record, for

4   clarity, that is correct that the government reached out

5   Thursday of last week to make contact with defense counsel.

6   The government didn't hear back that evening, and so, Friday

7   morning the government reached out via email, let defense

8   counsel know that there had, in fact, been an indictment, and

9   that Mr. Lofaro should self-surrender by noon if he did not

10  want to be arrested on the warrant that was issued along with

11  the indictment.  The government, at that point, did not know

12  that Mr. Lofaro's father had passed away and that he was en

13  route to a funeral.  So I just want that to be clear.

14        Your Honor, this case began really in November of

15  2021.  That was the time when the FBI in Ohio was

16  investigating a separate target there in connection with the

17  trafficking of child sexual abuse material.  The FBI in Ohio

18  did a search warrant on the home and electronic devices of

19  their subject there and discovered, upon review of that

20  subject's electronic devices, that that person had been

21  engaged in chats via Kik, which is a social media application

22  and messaging application, that also enables users to trade

23  media files.  The subject there had been in touch with the

24  user, who through investigation, they learned was, in fact,

25  the defendant, Mr. Lofaro.  And that in at least one chat with

─────── United States v. Lofaro ───────

7

1   Mr. Lofaro, the subject in Ohio had sent Mr. Lofaro child

2   sexual abuse material at his request.

3          If you look at the packet of exhibits, Your Honor,

4   in front of you, Government's Exhibit 1 is that chat with the

5   subject in Ohio.  Your Honor can see that there are several

6   columns here in this exhibit, and I apologize.  This is

7   printed very, very small.  But the column on the left is the

8   display name of the participant, the message sender is, of

9   course, the sender of the message.  All messages sent by

10  Seagull Dupad (ph), which is the display name for Mr. Lofaro

11  on the Kik social media application, all of his messages that

12  he sent are shaded in blue.  That is going to be the case for

13  all of the exhibits here in front of Your Honor.

14         You can see that these Kik chats occurred on

15  October 20th of 2021 into the next day.  And if you look at

16  the time stamp for the chat sent by the Ohio subject, 23:27,

17  it shows "You added the subject from a group you were in

18  together, NN Cuties."  Law enforcement would tell Your Honor

19  that "NN" stands for, in the child exploitation world, "nearly

20  nude" or "not nude."

21         And then you can see in response on the user account

22  that belongs to Mr. Lofaro responded, "Love what you just

23  posted.  Do you have any a bit more revealing?"  The subject

24  responds, "I might."  Lofaro responds, "There are media

25  attachments sent."  You can see all the way in the right-hand

———————United States v. Lofaro———————

8

1  column the messages that include a media attachment.  Lofaro

2  responds, "Oh, very nice.  And then after two more attachments

3  he says, "Any penetration?"

4       And then there is a message sent by the Ohio subject

5  at 3:30.  That is a media attachment that is bolded in red.

6  That is -- this is true for the -- any subsequent exhibit that

7  the media attachment's bolded in red are attachments that have

8  been reviewed by law enforcement and determined to depict

9  child pornography or child sexual abuse material.  That file

10 in particular, Your Honor, law enforcement would say depicts

11 two prepubescent minors engaged in sexually explicit conduct.

12       So, Your Honor, that this chat and that Ohio

13 investigation by the FBI was the jumping off point of the

14 instant investigation in the case against Mr. Lofaro.

15       THE COURT:  So unless it's bolded in red, the media

16 attachments have not been determined to be child pornography?

17       MS. HALPER:  Correct.

18       THE COURT:  Okay.

19       MS. HALPER:  Those attachments were reviewed and do

20 not depict things that qualify under the federal definition of

21 child pornography.

22       THE COURT:  Okay.

23       MS. HALPER:  I will tell Your Honor that -- so after

24 that information was obtained by FBI in Ohio, it was -- there

25 was, obviously, some subsequent law enforcement investigation

──────── United States v. Lofaro ────────

9

1  into the identity of this user through subpoenas.  They were

2  able to identify him, the user of this account, as Mr. Lofaro.

3  The IP logs attached to this Kik account show that there were

4  IP log-ins that traced back to Mr. Lofaro's residence to an IP

5  that is registered with his name at his residence in Fairfax

6  County.

7          THE COURT:  I'm sorry.  When did you make that

8  determination?

9          MS. HALPER:  That was done roughly at the end of

10  2021, the investigation into the identity of the user.

11          THE COURT:  Okay.

12          MS. HALPER:  Then, Your Honor, as defense counsel

13  noted in 2022 -- pulling up the date for you specifically --

14  May 18th of 2022, there was a search warrant at Mr. Lofaro's

15  residence in Fairfax County.

16          On that date, FBI and NCIS, who became attached to

17  this case, Your Honor, because of the defendant's employment

18  with the Naval Research Laboratory as a civilian, NCIS was

19  then made part of the case.  So law enforcement collectively

20  took 300 electronic devices from Mr. Lofaro's residence, or

21  roughly, I'll say approximately 300 electronic devices.  One

22  of the electronic devices that was taken that day was an

23  iPhone 12 mini that was taken directly from Mr. Lofaro's

24  person.

25          Much of the evidence in this case, Your Honor, came

─────────────────United States v. Lofaro─────────────────

10

1   directly off of that iPhone 12 mini that was taken from Mr.

2   Lofaro.  Namely, and I think most relevant to today's

3   proceeding, the phone was forensically examined, and it was

4   found to contain a repository of Kik chats in a database

5   associated with the application.  As well as media attachments

6   that matched the attachments sent and received through the

7   chats in another folder associated with Kik.

8          These chats that were -- that were found on the

9   phone were dated approximately February of 2021 to May of

10  2022.  Upon review of those chats, there were numerous

11  instances, more than 15 days -- 15 or 16, roughly, discrete

12  days in that time frame when child sexual abuse material was

13  traded, both distributed and received.  And in fact, on more

14  than one of those discrete instances or days, when it was

15  traded, there were many files traded by Mr. Lofaro,

16  distributed by him, received by him.

17         There was, for example, one day, in particular, or

18  two days, actually, in particular, in February of 2022, when

19  there were more than -- there was 45 files one day and 46

20  files the next day, child pornography files that were traded

21  back and forth between Mr. Lofaro and other users.  Review of

22  those chats, Your Honor, shows that Mr. Lofaro was in many

23  different Kik groups.  Kik groups are formed oftentimes to

24  target or create a forum for members who are interested in the

25  same types of content.

──────────────United States v. Lofaro──────────────

1      Mr. Lofaro was in groups, for example the NN Cuties

2  group.  Other groups that were -- had "incest" in the title.

3  If you look, Your Honor, at Exhibit 6, this was one of the Kik

4  chats that was found on Mr. Lofaro's phone.  Again, you can

5  see the participant there all the way to the left, and his

6  messages are shaded in blue.  You can see at the top that this

7  user was added to this message from a group #IncestWeTrust.

8  And Mr. Lofaro, this is in August 13 of '21, says "S2R."  Law

9  enforcement would tell Your Honor that "S2R" is shorthand

10  often used in the child exploitation context to mean send to

11  receive.  It's trading lingo.

12      And then Mr. Lofaro says, "Incest and family BTW."

13  The other user responds, "I've got very young incest."  And

14  Mr. Lofaro says, "I like that, I have some of that nature."

15      In addition, Your Honor, there were other chats

16  uncovered in the review of the device.  And these exhibits,

17  Your Honor, these are excerpts.  Many of these chats went on

18  for a substantial period of time.  The way that the forensics

19  uncovered these chats, there were private messages sort of

20  embedded, if you will, in larger group chats.  So it all

21  appears on an Excel spreadsheet with just a running chat log,

22  and you know, you can see the dates, but there is group chats

23  and private messages mixed in.  So these are excerpts from

24  that log, Your Honor.

25      THE COURT:  And again, this is all from the iPhone

─────────United States v. Lofaro─────────

12

1   that was seized on -- in May of 2022?

2          MS. HALPER:  That's correct, Your Honor.

3          THE COURT:  Okay.

4          MS. HALPER:  And then in looking at Exhibit 2, which

5   should be the next exhibit in the packet, this, again, is

6   another Kik chat.  This is from December of 2021.  This sort

7   of just generally is a discussion between Mr. Lofaro and

8   another user about this other user's opportunities of abusing

9   sexual -- of sexually abusing children in real life in foreign

10  countries.  In particular, they talk about this other user's

11  sexual abuse of children, particularly 6- and 7-year olds in

12  Thailand.  And you can see in this chat, Your Honor, Mr.

13  Lofaro says things like, at 8:07, "I heard that in Thailand

14  there are places where you can play with a mom and their

15  little one.  Have you ever been to anything like that?"  The

16  user responds, "LOL.  You can sneak in touches because they

17  are innocent and don't know."

18          Going down a little further, Mr. Lofaro says, "You

19  ever take pics?"  Then down -- and then the user says, "Can't

20  get caught."  Mr. Lofaro responds, "Makes sense.  Have you

21  ever played with their pussy?"  The other user responds, "The

22  6- and 7-year olds, you can put your hand between their legs."

23  Et cetera.  You see it in front of you.  And then finally, at

24  the end, Mr. Lofaro says, "Now I want to go to Thailand."

25          Exhibit 7, Your Honor, which is the next one in your

─────────────────United States v. Lofaro─────────────────

13

1   packet, again, this is another excerpt from the Kik chats.

2   This excerpt comes from a chat on June of 2021 between

3   Mr. Lofaro and another user.  In this chat, Mr. Lofaro and

4   this other user discuss the other user having seen his minor

5   daughter engaged in sexual activity.  Mr. Lofaro goes on to

6   talk about, he says at 5:02, "Hypothetically, one of my

7   friends has a daughter that gets-together with me and another

8   family that we are friends with from time to time.  One time

9   my one friend's son and my other friend's daughter hit it off

10  and were playing with each other in the pool."  He goes on to

11  talk about having hypothetically watched that.  And then asks

12  this other user, "You have pics of your daughter?"  And they

13  talk about trading, Your Honor, and then you can see that

14  Mr. Lofaro asked for these pics and then indicates that he

15  doesn't trade in this account and wants to turn on another

16  device in order to effectuate that trade.

17          I'll also tell, Your Honor, that law enforcement's

18  review of these Kik chats also uncovered multiple chats in

19  which Mr. Lofaro talks about having fantasies of sexually

20  abusing a fictional 9-year old daughter.  Of course, to the

21  government's knowledge, he doesn't have children, but that is

22  something that's discussed.  There is also a number of chats

23  that were uncovered in the examination that talk about

24  Mr. Lofaro's having essentially cleared his contraband.  He

25  calls it "purging."  That's what Exhibit 3 in this packet

─────────── United States v. Lofaro ───────────

14

1    shows, Your Honor.  There are two different sets of chats

2    here.  There's a set, at the very top, from February 4th where

3    Mr. Lofaro tells another user that he did a purge, "But I'll

4    send you some when I get them back, need to keep things clean

5    just in case."

6            And then, you can see below that a set of chats from

7    February 5th of 2022, where he's talking to a couple different

8    users here, and talking about touching, mentioning that he's

9    done this purge.  You can see that one of the users at 3:22

10   sends him a file that's been reviewed that depicts child

11   pornography.  He responds, "That is hot.  So how did you get

12   to touch?"  And then they go in -- on to talk about this other

13   user's niece who he says, the other user says, that he touches

14   while she sleeps and that she's 12.  Mr. Lofaro says, "Good

15   age, and she did not wake up?"  Because he talks about

16   touching her when she's asleep.

17           That's -- it's a lengthy chat, Your Honor.  I

18   included that because it has these references to purging and

19   it has further references to interest in the sexual abuse of

20   children in real life in addition to the trading of this child

21   sexual abuse material.

22           THE COURT:  Okay.

23           MS. HALPER:  Your Honor, the next exhibit, which is

24   5, this is from August 18th of 2021.  Again, another Kik chat

25   between Mr. Lofaro and another user, wherein he, again, talks

─────────────────── United States v. Lofaro ───────────────────

15

1   about not having anything to trade due to a recent purge.

2   This user had said that he was mainly interested in young and

3   or incest, and Mr. Lofaro responds, "Okay.  I removed all of

4   those the other day."  Your Honor, those exhibits that I just

5   talked about were, again, those were the Kik chats from the

6   iPhone.

7           Now, when law enforcement reviewed the devices that

8   were obtained pursuant to the search warrant, particularly

9   this iPhone, they came upon videos that were saved down to the

10  iPhone that appeared to have been video -- screen captures,

11  screen recordings of Snapchat videos that appear to depict a

12  minor in a sexual context.  When they found that, law

13  enforcement sought a search warrant for Mr. Lofaro's Snapchat

14  account.  The Snapchat return included a set of chats with a

15  purported minor.  The chats that Snapchat returned are

16  contained -- or part of the chats that Snapchat returned are

17  contained in Government's Exhibit 4, which is the next exhibit

18  in the packet in front of you, Your Honor.

19          I mentioned these chats in particular because, as I

20  said in front of Judge Fitzpatrick last week, the government

21  is investigating the possibility of an additional charge of

22  production of child pornography.  That is based on the chats

23  that are included in Government's Exhibit 4.  As you can see,

24  Your Honor, in these chats -- and I'll tell the Court, it's a

25  little confusing, but the way that Snapchat returned this

────────────────── United States v. Lofaro ──────────────────

16

1    information, it is in reverse chronological order.

2            THE COURT:  Okay.

3            MS. HALPER:  Not terribly helpful, but if you start

4    at the very last page -- and this is the last exhibit in the

5    packet, anyway.  You can see that the chats start with this

6    other user on November 7th of 2021.  And the other user,

7    because this other user is a purported minor, the username is

8    redacted from this document.

9            THE COURT:  I'm sorry, and in this one JeffG2007 is

10   Mr. Lofaro?

11           MS. HALPER:  Correct.

12           THE COURT:  Okay.

13           MS. HALPER:  On now -- in reverse chronological

14   order, the second page, well, it's three pages, so it's the

15   second page no matter what.  But you can see on November 11th

16   and, again, Mr. Lofaro's messages are shaded in blue here.  He

17   says, "How old are you?  I am 22."  The other user responds,

18   "15."  He says, "Oh, you are young."  You can see in the next

19   column that there are attachments with these chats.  The one

20   that is highlighted and in red has been reviewed.  And sorry,

21   actually, it should be the next page.  But I'll go on to

22   tell -- so as you can see through reading these chats, Your

23   Honor, they engage in -- or Mr. Lofaro engages in a sexual

24   discussion.  He talks about sexual acts that it appears he's

25   fantasizing about doing to this purported minor.

──────────────United States v. Lofaro──────────────

17

1          And then on the first page of this exhibit that has

2     the exhibit marker on it, if you look at 1534 and 33 UTC time

3     on November --

4          THE COURT:  11.

5          MS. HALPER:  Yes, thank you.  November 11th, after

6     he talks about these sexual acts, he says, "Can you send a pic

7     of your pussy?  I want to see what I just came in."  The

8     purported minor sends back this attachment.  That attachment

9     has been reviewed.  It depicts a close-up view of a vagina.

10    You can see in those chats that this purported minor indicates

11    that they live in a foreign country.  The government is

12    seeking to interview that individual.

13         Finally, Your Honor, I'll try to just wrap up very

14    quickly here but --

15         THE COURT:  Can you just tell me --

16         MS. HALPER:  Yes?

17         THE COURT:  How have you -- I don't need all the

18    details, but how did they confirm that the video is a minor?

19         MS. HALPER:  So it's not a video.  It's an image.

20         THE COURT:  An image, sorry.

21         MS. HALPER:  And it depicts a close-up of a vagina,

22    and that's why, at this point, the government is seeking to

23    have that interview to corroborate that this is who we really

24    think it is and that it shows what we think it shows.  But

25    that's why that charge hasn't been added yet.

United States v. Lofaro

18

1          THE COURT:  Okay.

2          MS. HALPER:  So there's additional investigation

3    that's being done there.

4          THE COURT:  And is it also the fact that the

5    responder says 15 is the age?

6          MS. HALPER:  Correct.  The user says that they are

7    15, yes.

8          THE COURT:  Okay.

9          MS. HALPER:  And Your Honor can see the Count 3 of

10   the indictment, which charges possession of child pornography,

11   includes -- specifically list out two other electronic

12   devices.  It's a MacBook Pro and a MacBook Air laptop.  Both

13   of those laptops were, of course, forensically examined, found

14   to contain child pornography.  The MacBook Pro contained child

15   pornography videos, specifically.  Over 100.  The MacBook Air

16   contained a password-protected encrypted archive file.  And

17   once forensic examiners were able to figure out the password

18   to decrypt it, to open it, inside they found a MEGA Sync

19   download folder.  MEGA Sync is associated with the MEGA

20   application, which is a cloud-based platform that allows for

21   file sharing, essentially, between members and also storage

22   function.

23          Once they were able to open that folder, they found

24   approximately 400 images and more than 70 videos depicting

25   child sexual abuse material, including child sexual abuse of

─────United States v. Lofaro─────

19

1    an infant.  So, Your Honor, I do have -- those are the facts

2    that I think are important for the Court to know.

3            Again, just moving towards argument, I would say,

4    Your Honor, that this is a presumption case under Title 18,

5    Section 3142(e)(3)(E) because these offenses involve a minor.

6            Beyond that, Your Honor, obviously, there were a

7    tremendous number of electronic devices taken from the home in

8    this case.  There is evidence that not only is Mr. Lofaro a

9    collector of electronic devices, uses many of them, but he

10   also took measures to hide and avoid detection for his

11   criminal conduct.

12           The archive file that contained child sexual abuse

13   material was password protected and encrypted.  There were

14   multiple chats with other Kik users where he talked about

15   purging to keep things clean.

16           And on that note, I would also tell Your Honor that

17   when he spoke with pretrial, that there was a comment made

18   about -- grab the report here -- that there was a comment --

19   and this is page 3 of 6, the last large paragraph there under

20   "employment history" -- that he mentioned that he had multiple

21   computer Internet-capable devices at his residence, that after

22   his initial appearance, it was suggested that they be

23   surrendered to his attorney.  However, he indicated that there

24   were too many to surrender.

25           He is, obviously, someone who uses a tremendous

─────────────────── United States v. Lofaro ───────────────────

20

1    number of these and that is -- presents a risk here and a

2    concern to the government about how he's using these devices.

3           Furthermore, Your Honor, these were not -- this was

4    not a single, discrete instance of receipt or distribution.

5    This was multiple instances of receipt and distribution over

6    the course of at least August of 2021 to February of 2022.

7    During this time period, there was at least one instance in

8    which the government suspects, or is at least investigating, I

9    should say, the possibility that he induced or used a minor to

10   create child abuse material or at least attempted to use a

11   minor to create child abuse material.

12          THE COURT:  And that's Exhibit 4?

13          MS. HALPER:  Correct.

14          Furthermore, Your Honor, of concern to the

15   government, are the conversations that Mr. Lofaro had with

16   others wherein he discussed his own fantasies about sexually

17   abusing a child, where he discussed other users and their

18   sexual abuse of a child.  Not in what is, you know, an effort

19   to gain information, but almost in sort of like a whetting

20   appetite or a goading fashion.  That there is -- that that

21   creates some real risks there and some concern.  And the fact

22   that there were multiple devices that were positive for child

23   abuse material when they were examined.

24          Based on those things, Your Honor, the government

25   has concern about risks to the community and, therefore, the

─────────────────United States v. Lofaro─────────────────

21

1    government is seeking detention pending resolution of this

2    case.

3              THE COURT:  Okay.  And, Ms. Halper, I think you just

4    said it, but just to confirm, you're moving for detention

5    based on danger to the community, not risk of flight?

6              MS. HALPER:  Predominantly on risk to the community,

7    Your Honor.  Risk of flight, I would suggest, you know, is

8    probably always a possibility when you're -- when an

9    individual is facing charges of this nature and particularly

10   charges that carry a mandatory minimum.

11             In this instance, pretrial specifically noted that

12   he did have frequent travel.  He has contacts abroad,

13   obviously.  Though, I believe he turned in his passport to

14   defense counsel, so that ameliorates that concern to some

15   degree.  But in candor, as the Court noted, the real thrust of

16   the argument and the concern here is about danger to the

17   community.

18             THE COURT:  Okay.  Let me ask you a couple more

19   questions.

20             So Mr. Salvato said, I think, there were two

21   searches, and I think you maybe acknowledge that, as well, of

22   his house; is that correct?

23             MS. HALPER:  No.  So, yes, there were two searches.

24   The first search was of his house.  At the time that his home

25   was searched, he was employed with the Naval Research

United States v. Lofaro

22

1    Laboratory.  He was stationed in Japan for that job.  He was

2    home on some leave at that time, and that's when the search

3    warrant was executed.  Because he was home on leave and he had

4    maintained a residence in Japan when that search happened and

5    his employment status, I believe, changed at that point, His

6    belongings in Japan were packaged up and sent back to the

7    Eastern District of Virginia where he was living.  The

8    government and law enforcement had reason to believe that he

9    had electronic devices among the stuff that was packaged and

10   sent back from Japan.  So when the moving truck with those

11   things on it came back, then a search warrant was executed on

12   the moving truck for electronic devices.

13           THE COURT:  And was child pornography found on those

14   devices?

15           MS. HALPER:  I don't believe so, Your Honor.

16           THE COURT:  Okay.  And I think you said there were

17   300 electronic devices that were seized in the May 2022 search

18   of his residence?

19           MS. HALPER:  Correct, Your Honor.

20           THE COURT:  We talked about the phone, and I think

21   one MacBook.  Are there other devices from that 300 that had

22   material on them?

23           MS. HALPER:  There were two MacBooks and the iPhone

24   that had child pornography material on them.  There were some

25   very old CDs, optical disks, that were removed, I believe

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

─────────United States v. Lofaro─────────

23

1  from, like a detached garage or a storage shed that had

2  material that was ultimately considered more what we call

3  category 2, or child erotica type material, that was sort of

4  concerning but not -- not clearly child pornography.  So there

5  were a couple of electronic devices that fell into that

6  category, but in short, the three devices that I've discussed

7  today are the three devices that contained child pornography.

8            THE COURT:  Okay.  So when you say 300 electronic

9  devices, includes things like CDs?

10            MS. HALPER:  Yes.

11            THE COURT:  Okay.  Okay.  All right.  I may have

12  more questions as we go along, but that's it for now.  Thank

13  you.

14            MS. HALPER:  Thank you.

15            MR. SALVATO:  Thank you, Your Honor.  Your Honor, in

16  terms of just a couple of things that the government said.

17  Obviously, I don't have an agent here to cross-examine on some

18  of the representations that the government made in terms of

19  its proffer.  Obviously, we have not received any discovery in

20  the case, so there is a tough situation to refute some of the

21  allegations that the government has put forth in these

22  exhibits.  These exhibits were given to us today, Your Honor,

23  probably about ten minutes before the hearing started.  So we

24  haven't had an opportunity to review them independently or

25  with Mr. Lofaro.

─────────United States v. Lofaro─────────

1          I will start with this mention, kind of, where the

2    government left off on this mention of this Snapchat with this

3    purported minor.  Your Honor, I can tell the Court that that

4    argument or those factual allegations were put forth before

5    Judge Fitzpatrick, as well, last week, and he still decided

6    that Mr. Lofaro should be released.  And Mr. Lofaro has

7    actually returned.  We don't know at this point, Your Honor,

8    that person actually exists, whether that person is a male,

9    whether that person is an overage female, whether that person

10   is an underage minor.  There's no way to tell who that user

11   was.  What was represented to Judge Fitzpatrick, and what

12   seems to be represented to this Court, is that there are --

13   there is an unknown person overseas who apparently sent a

14   picture of female genitalia.  Obviously, Mr. Lofaro hasn't

15   been charged with that offense.  We don't know, again, if

16   that's an adult, a male, or a minor female.  We have no idea.

17          Also, in that chat, it looks like -- and again, it's

18   hard to read, but at some point, Mr. Lofaro -- or somewhere in

19   that chat back and forth, there's an indication of, you look

20   23, or something along those lines.  So again, Your Honor,

21   that charge has not been brought.  He hasn't been indicted

22   with that.  We don't know the basis of that charge.  That's

23   some unknown person in a foreign country.  So I would take

24   that for what it's worth, and I think Judge Fitzpatrick saw

25   that for what it's worth.

—————————United States v. Lofaro—————————

25

1      Your Honor, the second thing I would say in terms of

2  the government's proffer, is that we haven't reviewed any of

3  these images.  We haven't participated in any discovery.  We

4  don't know what the forensics look like in terms of

5  evaluation, whether the government can tie Mr. Lofaro himself

6  to those chats or how that exactly happens.  So we're at a

7  little bit of a disadvantage because we haven't, obviously,

8  undergone the investigation and the discovery in this case.

9      It looks like, Your Honor, from reading between the

10  lines of what the government said, is that any allegation,

11  kind of, ends in November or February of 2022.  So you got

12  quite some period.  Apparently, he was overseas.  There were

13  some -- a secondary search done.  There was no child

14  pornography involved in that secondary search.  So it seems

15  like, even giving the government the absolute benefit of the

16  doubt -- which I don't think we can at this point because he's

17  presumed innocent.  We haven't seen the discovery -- that any

18  alleged participation ended, in terms of the search, in 2022

19  after he retained counsel.

20      It also appears as if from the government's proffer,

21  that Mr. Lofaro never went out to meet a minor, tried to

22  solicit a minor.  There's no actual contact with a minor in

23  any way, shape, or form.  These looks like, at worst, Kik

24  chats back and forth with other people that are in groups.

25  And I don't know if those groups generated the material in

─────────────United States v. Lofaro─────────────

26

1   question, whether Mr. Lofaro did.  Again, that's an open

2   question, because we haven't reviewed anything.  But it seems

3   like there's been no contact between Mr. Lofaro and any minor

4   whatsoever in this case, which I think is important in terms

5   of the government's argument about danger to the community.

6           Your Honor, in terms of the pretrial report, which

7   I'm sure the Court has reviewed, Mr. Lofaro stands before the

8   Court 39 years old.  He has no record whatsoever and a solid

9   family and employment history.  As the government indicated,

10  he was employed with the Naval Research department or

11  laboratory for a good period of time, had no issues there.

12  Mr. Sprano and I have been involved with that organization in

13  terms of his employment, benefits and, sort of, as -- as he

14  was, kind of, left that employment.

15          He has been employed full-time as a programmer for

16  Hanson Robotics since March of this year, 2023, which has a

17  local office in Sterling, Virginia.  His wife -- they've been

18  married for ten years now.  His wife, Ms. Yang, also known as

19  Nat, is here.  They don't have any children from the union so,

20  kind of, these talks, these fantasy talks about, oh, I have a

21  child or something like that, that seems to be just fantasy

22  talk at worst, or puffery, or whatever we want to call it.

23  But they have no children.  They've been married for the past

24  ten years.  They reside in Ballston, Virginia.  And as I

25  indicated to the Court, his wife is here.

─────────────────── United States v. Lofaro ───────────────────

27

1          His wife is employed.  She's a permanent resident.

2   Pretrial services did the research on her.  She's been in the

3   Northern Virginia area since 2015.  And she's indicated that

4   Mr. Lofaro is permitted, even after hearing everything that

5   the government said today and the other day in front of Judge

6   Fitzpatrick, that she is willing to serve as his third-party

7   custodian.  She advised that she would permit the institute --

8   the installation of location monitoring, which Mr. Lofaro has

9   had since he was released by Judge Fitzpatrick, and I think

10  she's an appropriate third-party custodian.

11         His mom is also here.  She came down from

12  Pennsylvania.  She's also been interviewed as an appropriate

13  third-party custodian.  They live in Ardmore, Pennsylvania.

14  So the Court, kind of, has two options in terms of the

15  third-party custodian.  We would ask that he be allowed to

16  return to his house, be able to work remotely.  He, of course,

17  agrees to the condition noted by pretrial of computer

18  monitoring of any system that he is using.

19         Your Honor, the couple last things that the

20  government mentioned, I think on page 3 of 6, they said that

21  the defendant indicated there were too many to surrender and

22  instead opted to stay with his mother in Pennsylvania during

23  his temporary release.  We were in a very tight situation

24  because he was trying to get to Pennsylvania for his dad's

25  funeral.  It's 3:30 in the afternoon.  It was a situation

─────── United States v. Lofaro ───────

28

1    where he wasn't going to be able to get everything out.  We

2    came to an agreement with pretrial and the Marshals that he

3    would simply just go to Pennsylvania, and we would deal with

4    that issue later.

5         Mr. Lofaro, I can tell the Court, certainly consents

6    to any computer monitoring and the removal of any items,

7    working that out with pretrial, that are not necessary for his

8    employment.

9         Your Honor, pretrial has considered the danger

10   situation.  They have considered the flight risk situation,

11   and they've submitted conditions to the Court which we believe

12   are completely appropriate in this case.  This is clearly a

13   release case in our opinion, and especially, Your Honor, this

14   case has been pending for 15, 18 months.

15        Mr. Lofaro reached out to us immediately.  If he was

16   going to go anywhere, he would certainly have gone, but he's

17   here with retained counsel.  He's had retained counsel, and I

18   can tell the Court he has been in touch with us constantly

19   over the past 15 months.  If there was any desire for him to

20   leave, contact a minor, do anything that was dangerous, or

21   that would show a flight risk, that would have been done over

22   the past 15 months.  He has counsel.  He has had counsel.  The

23   government was aware that he had counsel.

24        We haven't seen any of these exhibits or any of

25   these proffers until actually today.  Mr. Lofaro is ready to

─────────────United States v. Lofaro─────────────

29

1  defend these charges, and we're ready to represent him.  It's

2  clearly a release case, and we'd ask the Court to release him.

3         THE COURT:  Mr. Salvato, just a couple of questions.

4  Did Mr. Lofaro have a security clearance with the naval job?

5         MR. SALVATO:  He did.

6         THE COURT:  He did.  Do you know what level?

7         MR. SALVATO:  It's S.

8         THE COURT:  S, secret?  Okay.  And I, too, took note

9  of the statement on page 3 of 6 of the pretrial services

10  report that there are too many devices in the home to

11  surrender.  I understand your point about the tight timeline

12  on Friday.  How many devices are we talking about -- a

13  two-part question.  How many devices are we talking about, and

14  how many are actually necessary for employment?

15         MR. SALVATO:  We've talked about that before court,

16  Your Honor.  I would say he has a number of devices.  I can

17  ask Mr. Lofaro the exact number, but what we would propose --

18  and we worked with pretrial in these types of issues before,

19  is he will have one computer which operates on a Window [sic]

20  10 or Windows 11, or whatever the -- whatever pretrial can

21  monitor.  That has been, in my experience, completely

22  consistent with their monitoring devices or software.

23  Everything else will be removed, other than that one computer

24  that can be monitored.  So we can remove any and all devices

25  to the satisfaction of pretrial.  Other than that one which,

─────────────United States v. Lofaro─────────────

30

1    it's now Linux, he will convert it to Windows 10 or 11 or have

2    someone convert it to Windows 10 or 11, and then that computer

3    can be monitored safely by pretrial.  But we will remove

4    anything and everything else that's not connected to that one

5    computer so that he's able to work remotely.

6              THE COURT:  So he wouldn't need a phone?

7              MR. SALVATO:  Not a phone that's connected to the

8    Internet.  What I've done before, I had a case that would

9    actually -- involved some contact with minors in front of

10   Judge Nachmanoff when he was a magistrate judge, and Judge

11   Nachmanoff allowed a flip phone with no Internet capability.

12   That would be fine with us.  Obviously, he needs to get in

13   touch with us.  It would be helpful if he was locally

14   monitored and supervised versus in Pennsylvania, which are,

15   kind of, the two options for the Court.  But if he's local, it

16   makes it easy for him to use his flip phone to contact us and

17   vice versa as we go through this.

18             THE COURT:  Sorry to interrupt you.  Would you take

19   possession of the devices?

20             MR. SPRANO:  Your Honor, I was at the house on

21   Friday.  It's -- so when you walk in, it's almost like a --

22   kind of, a lab, if you will.  A lot of the devices appear to

23   be robotics components, so they're not things that would

24   independently be accessing the Internet.  So it was too much

25   for me, because he, kind of, works out of his home, so I

─────────────────── United States v. Lofaro ───────────────────

31

1   couldn't have fit it in my vehicle at that time or wouldn't

2   have known what to do with it.  But we talked about if

3   pretrial doesn't -- if they are not comfortable with what he

4   has there, they can rent a storage space and only either we

5   would have access to it or his wife would have access to it.

6   But that's the gist of it is, it's not like he has a bunch of

7   different, you know, I guess a server farm or anything like

8   that.  A lot of it is just, kind of, bits and pieces of his

9   robotics.

10          THE COURT:  Okay.  Yeah.  I don't want to put the

11  burden on pretrial to figure out how to -- what to take and

12  how to keep it.  To the extent I release him, and this is one

13  of my concerns, and so, I want to have that -- you-all figure

14  that out and maintain custody of it.

15          And then, to the extent -- I know his wife said, I

16  think in a pretrial services report I saw, that she removed a

17  laptop from the home, so the only device in the home would

18  be -- your proposal is the computer he needs for work?

19          MR. SALVATO:  Yes, Your Honor.

20          THE COURT:  Okay.

21          MR. SALVATO:  We have his passport.

22          THE WITNESS:  Yeah, passport.

23          MR. SALVATO:  (Not at the mic and indiscernible.)

24          THE COURT:  Okay.  And then working remotely

25  sometimes you're -- is the computer provided by the company?

─────────────── United States v. Lofaro ───────────────

32

1  Is there any use of company devices?

2         THE DEFENDANT:  No.  (Not at the mic and

3  indiscernible.)  That's my personal computer.  My company

4  computer is at work (Not at the mic and indiscernible.)  Based

5  in Hong Kong which is and one with (Not at the mic and

6  indiscernible.)  I work remotely for both of them.  And that

7  computer's at work, so I was using the personal one.

8         THE COURT:  Your personal one.  Okay.  And do you go

9  to the office in Sterling where there is?

10         THE DEFENDANT:  I don't need to.  That's a part-time

11  one, about 30 hours a week.  (Not at the mic and

12  indiscernible.)  And I normally work remotely.

13         THE COURT:  Okay.  And that's the part-time one?

14  And the one that's based in Hong Kong, is there a local office

15  that you go to as well?

16         THE DEFENDANT: (Not at the mic and indiscernible.)

17         THE COURT:  Okay.  Thank you.

18         MS. HALPER:  Your Honor, I don't mean to interrupt.

19         THE COURT:  Yes.

20         MS. HALPER:  Two points of clarification.  One,

21  Mr. Salvato did remind me to correct me.  I mentioned earlier

22  that the government had emailed on Thursday of last week to

23  get in touch but didn't hear back until Friday.  Mr. Salvato

24  did email me back that night and said that he would call me

25  the next day.  So to correct the record there.

—————United States v. Lofaro—————

33

1          The other thing is in his -- in his statement to the

2    Court, Mr. Salvato mentioned that he didn't have a witness

3    here.  I just wanted to be clear that Special Agent Coonheim

4    (ph) from NCIS is present in court.  So the proffer that I

5    gave to Your Honor is what I expect she would have testified

6    to had she testified.  If the Court or counsel has questions

7    based on that, she is present today.  I just don't want it to

8    appear that I've hidden a witness in plain sight.

9          THE COURT:  Thank you for the clarification and for

10   having her present.

11         MS. HALPER:  Thank you.  Just very briefly, Your

12   Honor.  Beyond that, obviously, the computer monitoring

13   software is something that the Court uses and pretrial uses to

14   ensure compliance with the conditions of release, and I think

15   that software is likely very good.  The concern, though, is

16   about electronic devices that are held surreptitiously that

17   wouldn't, obviously, because of their nature being

18   surreptitious, would not be subject to the monitoring.

19         This is an individual who has collected a

20   substantial number of electronic devices.  He works, as he has

21   said, in IT, in robotics.  He has a sophisticated knowledge

22   and understanding of electronics.  And that's the government's

23   concern that there could be electronics that the government

24   doesn't know about.  That's not a baseless concern, I would

25   argue to Your Honor.  There is evidence in this case of

──────────────United States v. Lofaro──────────────

34

1   attempts to hide and conceal.

2          I would also note to Your Honor that while all of

3   this was happening, he was married to and living with his

4   spouse.  The same spouse that they have offered and suggested

5   would be a suitable third-party custodian.  There's nothing

6   about her that gives the government pause, necessarily, about

7   her fitness to be a third-party custodian, but the fact that

8   she was married to him, living with him, all while he was

9   in -- doing these things, does give the government concern,

10  Your Honor.

11         And so, I just would like the Court to know that.

12         THE COURT:  Thank you.  I appreciate those concerns.

13  So what I'm charged with doing, as everybody I think knows, is

14  determining whether there is a set of conditions that would

15  reasonably assure the safety of the community.  Ms. Halper, I

16  take your point that we don't have the perfect -- we don't

17  necessarily have a perfect system, but reasonably, I have to

18  be reasonably assured that the safety of the community will

19  be -- and any other person, will be protected if I release

20  somebody pretrial.  You know, on the facts here, I think this

21  is a release case, but with conditions that are fairly

22  stringent.  And I'm going to add -- I'm going to tweak a

23  couple of the conditions that pretrial has suggested.

24         Let me preface what I'm about to say with this,

25  which is that my decision to release Mr. Lofaro in no way

──────United States v. Lofaro──────
35

1    condones any of the conduct alleged, including what is in

2    these exhibits, and I'm sure you have many more of them.  They

3    are concerning, the conduct here is -- is -- these cases are

4    always concerning.  I do find it persuasive, however, that we

5    don't actually know that the one communication -- at least

6    that I've been presented, and apparently Judge Fitzpatrick was

7    presented, about a potential communication with a minor is, in

8    fact, a minor, and that communication was quite a while ago.

9    The government executed these search warrants in 2022 and has

10   known about this conduct for some time, so they allowed

11   Mr. Lofaro to remain, you know, unindicted and out when

12   obviously, I think there was probably evidence to, at least

13   arrest him quite a while ago.  So the passage of time and the

14   fact that the -- the one instance was either communicating or

15   attempting to communicate with a potential minor is a -- quite

16   a while ago, I think more than two years ago and not -- not

17   confirmed to be a minor are persuasive for me in this

18   instance.

19           So, I am going to release Mr. Lofaro on the

20   following conditions -- and Ms. Halper as I go along, if there

21   are other conditions you'd like me to consider, please let me

22   know.  But...

23           So Mr. Lofaro is going to report to pretrial

24   services and be supervised by them.  He's going to be released

25   to the custody of his wife and not move from their residence

──────United States v. Lofaro──────

36

1  without prior approval of pretrial services or the Court.  He

2  must refrain from any contact with coconspirators, to the

3  extent there are any in this case, potential witnesses, or

4  victims related to the instant offense -- instant offense,

5  unless in the presence of counsel.  He must submit to

6  substance abuse testing and treatment, as directed by pretrial

7  services.

8          I understand he's already surrendered his passport

9  to defense counsel, but I'm directing that he also not obtain

10 a new passport or any other international travel documents.

11 His travel will be restricted to the Eastern District of

12 Virginia and the Greater Washington, D.C. metropolitan area.

13 Any and all other travel must be pre-approved in advance by

14 pretrial services or the Court.  Mr. Lofaro must refrain from

15 having any contact with minors under the age of 18 unless

16 another adult is present who has been pre-approved in advance

17 by pretrial services.

18         All right.  I want to talk about the devices.  We

19 talked about this a little bit.  So I am concerned about the

20 access to so many devices, and I understand the government is

21 as well.  I think the solution that Mr. Salvato has proposed

22 makes sense.  So, Mr. Lofaro, you need to refrain from

23 possessing or having access to a computer or the Internet

24 unless the computer monitoring program has been installed by

25 pretrial services.  You must consent to the installation of

─────────── United States v. Lofaro ───────────

37

1  computer monitoring software and any computer to which you

2  have access.

3          Installation must be performed by pretrial services,

4  and the software may restrict and/or record any and all

5  activity on the computer, including the capture of keystrokes,

6  application information, Internet use history, email

7  correspondence, and chat conversations.  You may not remove,

8  tamper with, reverse engineer, or in anyway circumvent the

9  software.  And the cost of the monitoring will be paid by you.

10  You must also refrain from possessing or utilizing any video

11  gaming system and consoles, phones with Internet capabilities,

12  or any such devices, which would enable contact and/or sharing

13  data with -- of data with other individuals known or unknown

14  to you.

15          I'm also going to require, consistent with the

16  discussion on the record, that all devices be removed and put

17  into the custody of defense counsel, to which Mr. Lofaro has

18  no access.  So whatever he needs, it sounds like one computer

19  for work and a flip phone that doesn't have Internet access,

20  and his wife's computer, I understand, has already been

21  removed.  If, for some reason, she has a device in the home,

22  it needs to be password protected so that Mr. Lofaro does not

23  have access.

24          I am also going to require that Mr. Lofaro inform

25  his employer that he's not allowed to have access to

─────────── United States v. Lofaro ───────────
                                                            38

1    Internet-capable devices, but if he does go to a local office,

2    that they don't inadvertently provide him access to an

3    Internet-capable computer.

4              Submit to and pay for sex offender evaluation and/or

5    treatment conducted by a certified sex offender treatment

6    provider as directed by the supervising officer and sign all

7    appropriate release forms.  Refrain from possessing or having

8    any access to firearms, destructive devices, or other

9    dangerous weapons as directed by pretrial services.  And I

10   understand that the firearms are currently and will remain in

11   the possession of defense counsel.

12             Defendant shall submit to home detention on the

13   location monitoring technology, which has already been

14   installed.

15             So what I'm going to do is have pretrial services

16   install whatever they need to at Mr. Lofaro's home.  I don't

17   know if there's any -- anything else that needs to be

18   installed for home detention.  And Mr. Lofaro, you have to

19   abide by all of the GPS and home detention requirements.

20   You'll be restricted to your residence at all times except for

21   employment, education, religious services, treatment, attorney

22   visits, court appearances, court-ordered obligations, or any

23   other activities that must be pre-approved by your supervising

24   officer.

25             Ms. Halper, any additional conditions you'd like the

United States v. Lofaro

39

1    Court to consider adding?

2            MS. HALPER:  No, Your Honor.

3            THE COURT:  Okay.  Mr. Salvato, any questions or

4    clarifications that you need from the Court?

5            MR. SALVATO:  No, Your Honor.  I appreciate the

6    Court's consideration.  I believe the arraignment is set for

7    next Wednesday in front of Judge Alston.  I believe that's a

8    good date for everyone.  I need to check with Mr. Sprano

9    before I talk too quickly, but Mr. Lofaro's next court date

10   for inclusion in the order of -- will be next Wednesday.

11           THE COURT:  Yes.  I have it as the 18th at 11:00.

12   Okay.  And we will put that.

13           So, Mr. Lofaro, you must appear at all court

14   appearances, and your next current scheduled appointment, a

15   court appearance, is October 18th at 11:00 a.m.  I'm going to

16   direct that you go down immediately to pretrial services and

17   wait for the order to be prepared, and then review it and sign

18   it, and then go to pretrial services and get everything worked

19   out.

20           I would like, Mr. Sprano, for you to take possession

21   of the devices as quickly as possible.  And to let pretrial

22   services know that you have everything, other than the one

23   computer that we've agreed on and whatever the flip phone

24   situation is going to be.  Okay?

25           MR. SPRANO:  Yes, Your Honor.  Can I just have just

EASTERN DISTRICT OF VIRGINIA

─────────United States v. Lofaro─────────

40

1  a clarification question?  Because of the definition of what

2  kind of device could be very broad in terms of anything that

3  you plug in or has a battery.  What I understand is it would

4  be anything that has data storage or Internet capability.

5          THE COURT:  Yes.

6          MR. SPRANO:  Just like a robotic arm that's not

7  connected -- I mean -- there's just a lot of stuff that's all.

8          THE COURT:  So my concern would be anything that

9  could be -- that is or could be connected to the Internet

10  with -- I mean I understand Mr. Lofaro has some IT

11  capabilities.  So anything that has the possibility of even

12  being altered to be connected to the Internet, I want it out

13  and with you.

14          MR. SALVATO:  Understood, Your Honor.

15          THE COURT:  But if it's something like a robotic arm

16  that doesn't have the ability to store things or Internet,

17  then, from my perspective, you don't need to take that out.

18          Ms. Halper, do you have a -- any concern about

19  things that don't have an Internet capability?

20          MS. HALPER:  I think Mr. Sprano mentioned also

21  anything that has -- capable of data and storage.

22          THE COURT:  Yes.

23          MS. HALPER:  Your Honor, I just say -- I appreciate

24  the Court taking the time to consider this case and to fashion

25  these conditions, these strict conditions.  I will tell the

──────United States v. Lofaro──────

41

1   Court that in considering the possible outcomes today for this

2   case, I did talk with a supervisor about, if this was one of

3   the outcomes, whether or not the government would seek to stay

4   the order and appeal, and I have been given approval to do

5   that, so I just want to respectfully do that now.  I

6   appreciate that the Court took a lot of time to set out those

7   conditions, but the government, at this point, is going to

8   appeal.  I will let chambers, Judge Alston's chambers know

9   that if the Court is willing to stay that -- stay this order

10  and see if that appeal can be taken up as quickly as possible,

11  but as late as Wednesday, next week since we already have that

12  court date.

13          THE COURT:  Okay.  The problem is he's already out.

14  So, I mean -- it's a wrinkle.  So I -- I'm willing to stay my

15  order until Friday at noon, but I don't -- he's already on

16  release, so.

17          MS. HALPER:  And it's --

18          THE COURT:  I don't know that you wanted me to

19  stay putting all these -- all these protections in place.

20          MS. HALPER:  I don't want to stay putting any

21  protections in place, Your Honor, if it's the Court's

22  interpretation that he would remain on release.  My

23  understanding in all -- I guess I would have to look more

24  closely at it -- but the temporary release order entered by

25  Judge Fitzpatrick last week was temporary release until now.

─────United States v. Lofaro─────

42

1   So I guess it is my interpretation that that temporary release

2   is expired, I guess at this point, as of 2:00 p.m.  So I think

3   that, if I'm asking you to stay the order and you agree to

4   stay the order, Your Honor, that he would then need to be

5   remanded until the detention hearing was heard by Judge

6   Alston.  But I agree it's an awkward posture.

7           THE COURT:  Yeah.  Okay.

8           MR. SALVATO:  I don't think there's any basis to

9   stay the order, Your Honor.  I think the Court's, Judge

10  Fitzpatrick's, reasoning was sound.  The Court's reasoning was

11  sound.  If the government wants to deal with that next

12  Wednesday, they can file an appropriate motion, but there's no

13  reason to stay the Court's release order.  There's not a

14  probability of success given no record, and he's been out for

15  15, 18 months.

16          THE COURT:  So, Ms. Halper, I think, just based on

17  where we are procedurally, if you want to appeal, obviously,

18  you're free to do that, but I'm not going to stay my order

19  because I think it actually adds more protection than what he

20  would be currently out on.  So I'm going to go forward with my

21  order.  And if you want to appeal it and have -- ask Judge

22  Alston to stay it and remand and you can do that.

23          MS. HALPER:  Understood.  Okay.  Thank you, Your

24  Honor.

25          THE COURT:  Yep.  Thank you.  Okay.  Is there

─────United States v. Lofaro─────
43

1  anything else?

2          MS. HALPER:  Your Honor, only -- in your order, did

3  Your Honor include the no-contact provision with witnesses,

4  potential witnesses.

5          THE COURT:  I did.  If I didn't say it out loud, I

6  meant to, but I think I read it, yeah.  No coconspirators and

7  witnesses, and victims.

8          MS. HALPER:  Yes.  Thank you.

9          THE COURT:  Okay.  Anything else?

10          MR. SALVATO:  No, Judge.

11          THE COURT:  Okay.  Well, we will -- you-all go down

12  to pretrial services, and we will work on the order here

13  promptly.  Thank you.  We're adjourned.

14          MR. SALVATO:  Thank you, Your Honor.

15          **(Proceedings adjourned at 3:11 p.m.)**

16

17

18

19

20

21

22

23

24

25

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
EASTERN DISTRICT OF VIRGINIA

1                      CERTIFICATE OF REPORTER

2

3            I, Tonia Harris, an Official Court Reporter for

4     the Eastern District of Virginia, do hereby certify that I

5     reported from the Court's FTR recording, in my official

6     capacity, the proceedings had and testimony adduced upon

7     the Detention hearing in the case of the **UNITED STATES OF**

8     **AMERICA versus DANIEL MARC LOFARO** Criminal Action No.:

9     1:23-cr-156, in said court on the 11th day of October,

10    2023.

11           I further certify that the foregoing 44 pages

12    constitute the official transcript of said proceedings.

13           In witness whereof, I have hereto subscribed my

14    name, this October 19, 2023.

15

16

17

18

19

20

21

22    _____

23    Tonia M. Harris, RPR
      Official Court Reporter

24

25

                                                              44